MARTHA LATTA, PLAINTIFF-RESPONDENT, v.
JAMES T. CAULFIELD, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 31, 1977—Decided March 15, 1978.

152

Before Judges FRITZ, BOTTER and ARD.

*Mr. Michael T. Cooney* argued the cause for appellant (*Messrs. Hueston, Hueston & Sheehan,* attorneys; *Mr. Robert T. Hueston,* of counsel).

*Mr. Herbert J. Kessler* argued the cause for respondent (*Messrs. Berenson, Kessler & Woodruff,* attorneys; *Mr. Lawrence A. Woodruff* on the brief).

The opinion of the court was delivered by

FRITZ, P. J. A. D. This is an appeal by the operator of an automobile from a judgment in favor of a pedestrian whom he struck, in an action in which the cause of action accrued prior to the enactment of our comparative negligence statute. See *N. J. S. A.* 2A:15–5.1 *et seq.* The principal concern of appellant, defendant below, involves a portion of the judge's charge focussing on proximate cause and exculpation of plaintiff's contributory negligence by defendant's subsequent negligent conduct. He characterizes this charge as an inaccurate and incomplete statement of the law capable of misleading the jury and constituting reversible error. We agree.

Plaintiff testified that one early evening, after dark, she was sitting on her front porch when a fight among 20 to 25 "kids" broke out in front of her house and spilled over on to her porch. When her peace entreaties failed, she went into her home to call the police. Her granddaughter aborted this mission by advising that the police were already across the street. Apparently a police car was parked on the far side. Plaintiff, reporting that she was going "[t]owards the cop's car * * * to ask him to try and stop the kids," testified that before she started across the street, she "went up and I looked. I didn't see no car coming." She then described the accident, involving a car coming from her right as she crossed, thusly:

A Then just as I got halfway in the street or across the white line — so I was going — I made but three more steps, and then I saw this car and I throw up my hands. I thought maybe he was going to let me pass.

 Q Did he let you pass?
A No, he didn't.
 Q What happened?
A He hit me.
 Q What part of the car hit you?
A The front.
 Q Now, how far across the street had you gotten when the car hit you?
A I had gotten three or four feet across from the white line.

Q On the other side of the white line?
A Yes.

She said she was wearing a blue dress and a pink and yellow apron.

A portion of her earlier deposition was read. In it she stated that she had seen defendant's car just after she crossed the white line; that it was then on the other side of an intersection at which a traffic light was situated, and that she "thought he was going to give me a chance to cross, but after the light went off, he just kept coming."

Defendant testified that he stopped for a red light at this intersection. He stated that when the light turned green he proceeded slowly because "there seemed to be some kind of disturbance ahead of me." This was the police car and "a group of people." All he was able to observe with respect to the accident was related thusly:

Q What did you do?
A I just proceeded slowly until the point of impact.
Q Tell us what happened?
A As I said, I was proceeding slowly because of the disturbance there and I came upon the impact. That's about all I can remember of it.
Q Where was Mrs. Latta when you first saw her?
A In front of my car. Impact.
Q About how fast were you going at the moment of impact?
A Eight to ten miles an hour.

In its return of a verdict for plaintiff, the jury answered written interrogatories:

THE COURT CLERK: What is your verdict as to question Number 1, "Was the defendant James T. Caulfield guilty of negligence?"?
[JURY FOREMAN]: Yes.
THE COURT CLERK: Did the negligence proximately cause the accident?, [sic] question Number 2.
[JURY FOREMAN]: Yes.
THE COURT CLERK: Was the plaintiff Martha Latta guilty of contributory negligence?
[JURY FOREMAN]: Yes.

THE COURT CLERK: Was her contributory negligence a proximate cause of the accident?
[JURY FOREMAN]: No.

The portion of the charge to which defendant excepts and which we find sufficiently misleading to require reversal is as follows:

> In this case even if you find that Mrs. Latta negligently placed herself in the position in the street exposed to danger, if her position was discoverable by a proper lookout on the part of Mr. Caulfield in time to have avoided the accident and he failed to use reasonable care in making a proper lookout, you may find that such failure by him was the sole proximate cause of the accident. If that is your finding, then even though both parties may have been negligent, your verdict would show that only Mr. Caulfield's negligence was the proximate cause of the accident.

We have had no doubt since *Pangborn v. Central Railroad Co. of N. J.*, 18 *N. J.* 84 (1955) that negligence on the part of a plaintiff, *i. e.*, failure to conduct himself according to the reasonable man standard, does not necessarily and inexorably doom that plaintiff to failure in the assertion of his action in negligence. We there learned that "[i]f the faulty act of the plaintiff simply presents the condition under which the injury was received, and was not in a legal sense a contributory cause thereof, then the sole question will be whether, under the circumstances and in the situation in which the injury was received, it was due to the defendants negligence." 18 *N. J.* at 102.

That which was elsewhere called and sometimes described as the "last clear chance" doctrine properly became only an application of the sound and time-honored principle of proximate cause.

But both *Pangborn* and our rejection elsewhere of the literal expression of "last clear chance," *i. e.*, responsibility visited on the one last able to avoid the accident for that reason alone, *Brennan v. Public Service Ry. Co.*, 106 *N. J. L.* 464, 466 (E. & A. 1930), require an examination of plaintiff's conduct as well as that of defendant in this quest for

answer to the proximate cause inquiry. As is noted in this respect in *Pangborn,* "the primary consideration is whether the faulty act of the plaintiff was so remote from the injury as not to be regarded, in a legal sense, as a cause of the accident, or whether the injury was proximately due to the plaintiff's negligence, as well as to the negligence of the defendant." 18 *N. J.* at 102.

It is this inquiry into the position of plaintiff, vis-à-vis defendant's opportunity to avoid the accident at the last minute, which has caused the *Restatement, Torts* 2d, § 479 at 530 and §480 at 535 (1965) to distinguish between the helpless plaintiff and the inattentive plaintiff:

§ 479. Last Clear Chance: Helpless Plaintiff
A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if, immediately preceding the harm,
(a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and
(b) the defendant is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm, when he
(i) knows of the plaintiff's situation and realizes or has reason to realize the peril involved in it or
(ii) would discover the situation and thus have reason to realize the peril, if he were to exercise the vigilance which it is then his duty to the plaintiff to exercise.
\* \* \*
§ 480. Last Clear Chance: Inattentive Plaintiff
A plaintiff who, by the exercise of reasonable vigilance, could discover the danger created by the defendant's negligence in time to avoid the harm to him, can recover if, but only if, the defendant
(a) knows of the plaintiff's situation, and
(b) realizes or has reason to realize that the plaintiff is inattentive and therefore unlikely to discover his peril in time to avoid the harm, and
(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm.

██ We think this distinction is sound and the law reported is in line with the law of New Jersey relating to

proximate cause. Plaintiff has a continuing duty to exercise reasonable care even after he has, through his original negligence, placed himself in a position of peril, if he hopes to be exculpated from the effect of his original negligence. However, defendant also has a continuing duty to exercise reasonable care. Sections 479 and 480 provide the conditions of liability for a defendant's failure to utilize with reasonable care and competence an existing opportunity to avoid injury to a plaintiff. Section 479 applies to a plaintiff who is unable to avoid injury by reasonable vigilance and care immediately before the injury, in which case defendant would be liable if he actually discovered *or should have discovered* plaintiff's situation. On the other hand, § 480 applies where a plaintiff by the exercise of reasonable vigilance could have discovered the peril in time to avoid injury. In such case a defendant is liable only if he *actually discovered* plaintiff's situation prior to the injury.

This distinction may be important here because testimony of a police officer was to the effect that plaintiff ran across the street.

So viewed, the impugned portion of the charge is deficient in that it made the dispositive question of proximate causation determinable solely on an inquiry into defendant's conduct: "if her [plaintiff's] position was discoverable by a proper lookout on the part of Mr. Caulfield in time to have avoided the accident." In truth, this was an application of the literal "last clear chance" doctrine rejected in *Brennan, supra,* the rejection of which is explained in *Pangborn, supra,* 18 *N. J.* at 100–101.

Our determination to reverse and remand for a new trial makes it unnecessary for us to consider whether the example used by the judge in his charge and criticized here by appellant was incorrect and prejudicial. The charge on the retrial, and any examples offered, should conform to the foregoing principles.

Reversed and remanded for a new trial.